636 A.2d 1270

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Eugene S. SHEPLEY.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 1993.

Decided Jan. 12, 1994.

Eugene S. Shepley, pro se.

Timothy P. Wile, Asst. Counsel In–Charge of Appellate Section, for appellant.

Before McGINLEY, PELLEGRINI and KELLEY, JJ.

KELLEY, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Lancaster County (trial court) which sustained an appeal by Eugene S. Shepley from a three-month registration suspension for lack of financial responsibility imposed pursuant to section 1786(d) of the Vehicle Code (Code), 75 Pa.C.S. § 1786(d). We affirm.

On August 24, 1992, DOT was notified by State Farm Mutual Auto Insurance Company (State Farm) that its policy of liability insurance covering Shepley's 1987 Dodge automobile had been cancelled as of July 26, 1992, for nonpayment of premiums. By official notice dated and mailed September 18, 1992, DOT informed Shepley that pursuant to section 1786(d) of the Code, his registration privileges for the Dodge were

scheduled to be suspended for three months, effective October 26, 1992, as a result of a lapse in financial responsibility coverage for the automobile.

On October 16, 1992, Shepley appealed the notice of suspension to the trial court, which held a *de novo* hearing on November 23, 1992. Shepley testified that in late July, 1992, he mailed his monthly insurance payment to State Farm. Inexplicably, the check was never paid by Shepley's bank, according to his checking account statements introduced as evidence.

Additionally, Shepley testified that he never received notification of the termination of his insurance from State Farm. He was therefore unaware of any problem until he received a letter from DOT dated August 25, 1992 notifying him of the lapse in insurance coverage. Upon receiving the notice from DOT, Shepley immediately contacted his State Farm agent who informed Shepley that he would have to reapply for insurance coverage. Shepley entered into a new insurance policy with State Farm whereby coverage recommenced August 31, 1992.[1]

DOT presented evidence of the lapse in insurance coverage in the form of a packet of documents containing copies of the official notice of suspension mailed to Shepley on September 18, 1992, and correspondence between DOT and State Farm showing that the policy covering Shepley was cancelled on July 26, 1992 for nonpayment of premiums.

The trial court did not issue a written opinion; however, at the conclusion of the hearing the trial judge stated the following:

Well, I'm sure, also, that it's not the purpose of the Department to be unnecessarily vindictive on somebody here. Here's a case where a person had insurance and for what I consider to be a justifiable reason it lapsed. And he didn't sit around and do nothing.

1. August 25, 1992, the date of mailing, was a Tuesday. We assume the letter was received by Shepley on Thursday, August 27, 1992. August 31, 1992, was a Monday.

> Now, he's got insurance. He got it within a month. And the Department proposes to impose a pretty harsh penalty, I would think. I'm going to sustain the appeal.

Later, the trial court issued an order sustaining the appeal on November 23, 1992. It is from that order that DOT now appeals.

■ Initially, we note that our scope of review of an appeal from a trial court is limited to determining whether the findings of fact are supported by competent evidence of record, an error of law was committed, or whether the trial court manifestly abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. Rapp,* 139 Pa.Commonwealth Ct. 144, 589 A.2d 805 (1991).

On appeal, DOT argues that the trial court erred as a matter of law in sustaining Shepley's appeal of the suspension, and erred when it entertained a collateral attack on the cancellation of Shepley's insurance policy, since this action was exclusively in the nature of a statutory appeal from a registration privilege suspension.

Section 1786 of the Code provides in pertinent part:

§ **1786. Required financial responsibility.**

(a) **General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

. . . .

(d) **Suspension of registration and operating privilege.**—The Department of Transportation shall suspend the registration of a vehicle if it determines that the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle without the required financial responsibility. ... Whenever the department revokes or suspends the registration of any vehicle under this chapter, the department shall not restore

the registration until the vehicle owner furnishes proof of financial responsibility in a manner determined by the department and submits an application for registration to the department, accompanied by the fee for restoration of registration provided by section 1960. This subsection shall not apply in the following circumstances:

(1) The owner or registrant proves to the satisfaction of the department that the lapse in financial responsibility coverage was for a period of less than 31 days and that the owner or registrant did not operate or permit the operation of the vehicle during the period of lapse in financial responsibility.

(2) The owner or registrant is a member of the armed services of the United States, the owner or registrant has previously had the responsibility required by this chapter, financial responsibility had lapsed while the owner or registrant was on temporary, emergency duty and the vehicle was not operated during the period of lapse in financial responsibility. . . .

■ To sustain a registration suspension under section 1786(d), DOT must prove that: (1) the vehicle in question is of a type required to be registered in the Commonwealth; and (2) that the required automobile liability insurance had been cancelled or otherwise terminated such that a lapse occurred in the required financial responsibility. *Department of Transportation, Bureau of Motor Vehicles v. Andrews*, 143 Pa.Commonwealth Ct. 601, 600 A.2d 622 (1991).

Once DOT has met its burden of showing a lapse in coverage, the burden shifts to the registrant to establish that he or she qualifies for one of the exceptions set forth in subsections (1) and (2) of section 1786(d). *Andrews*. The registrant may show that the lapse was for less than thirty-one days and that the vehicle in question was not operated during the lapse period.

DOT asserts that through the introduction of the pertinent certified documentation, DOT met its burden of proving that Shepley failed to maintain financial responsibility for his vehi-

cle from July 26, 1992 to August 31, 1992, a period of more than thirty-one days. Further, the evidence indicated that Shepley continued to operate the vehicle during the period of lapse in violation of the statute. Moreover, because Shepley failed to identify himself with one of the specific exceptions made available by section 1786(d), DOT argues that a *prima facie* case against Shepley was presented before the trial court.

However, the trial court sustained Shepley's appeal of the suspension on the basis that he had a "justifiable reason" for the lapse. DOT maintains that the trial court erred in incorporating an element of intent into section 1786 which does not appear in the plain language of the statute.

DOT directs our attention principally to this court's consideration of a similar issue in *Department of Transportation, Bureau of Driver Licensing v. Riley,* 150 Pa.Commonwealth Ct. 259, 615 A.2d 905 (1992). There we held that the trial court lacked the authority to sustain an automobile owner's appeal from a suspension of her vehicle registration for allowing her insurance coverage to lapse. The automobile owner alleged that she lacked knowledge of her insurance cancellation until she was notified by the lien holder on her vehicle over one month after her insurance coverage had lapsed. The insured acknowledged receipt of the notice that her premium was due, but denied receiving notice that her policy had lapsed after she failed to pay the premium before the due date. The trial court sustained insured's appeal on the basis that she was unaware of the cancellation and that she acted "reasonably and promptly" to obtain other coverage. *Id.* at 262, 615 A.2d at 907. On appeal, this court reversed the trial court on the basis that section 1786 does not contain a scienter requirement. We therefore concluded that DOT effectively met its burden of establishing that a lapse in insured's coverage as a result of the cancellation of her policy had occurred. The case *sub judice* is distinguishable from *Riley* because of Shepley's lack of knowledge of the cancellation of insurance coverage.

With respect to the question of what constitutes an effective cancellation of insurance coverage under Pennsylvania law, the

*Riley* court found instructive our Supreme Court's analysis in *Federal Kemper Insurance Co. v. Insurance Department,* 509 Pa. 1, 500 A.2d 796 (1985), a case which concerned the statutory construction and interpretation of the insurance statute, 40 P.S. § 1008.6(2). Relying in part on *Federal Kemper,* we noted in *Riley* that the insured's failure to pay the policy premium by the cancellation date or within the grace period afforded her constituted an "overt act" by the insured which cancels that policy. Such a cancellation then satisfied the first element of DOT's burden of proof in its suspension action.

Therefore our analysis in the instant appeal must logically examine the principle set forth in *Federal Kemper* to determine whether State Farm's cancellation of Shepley's policy was the result of an "overt act" on his part. That principle holds that in order for a policy cancellation to be effective, an insurer is required to show that the insured has knowledge that a premium was due but still refuses to pay it. The "overt act" contemplated is thus a knowing refusal to pay premiums due the insurer. If no such overt act is present here, then the cancellation is erroneous and DOT has failed to meet its burden.

The facts in *Federal Kemper* may be summarized as follows. An insured failed to respond to premium notices with respect to his automobile coverage until after the policy period and the grace period expired and he was involved in an accident. The Insurance Commissioner held for the insured, ignoring the evidence of insurer's three notices because they were not in the precise form required by the governing insurance regulations. This court affirmed the Commissioner.

In reversing the Commonwealth Court, the Supreme Court stated that although the insurer can cancel a policy at the end of its term only by using the prescribed notice, "cancellation of policy coverage for nonpayment of premium before the anniversary date is nevertheless effective if the insurer can show that the insured *knowingly* refused to pay a properly charged premium, thus manifesting by overt acts his own intent to

cancel the policy." The court continued, "[a]n insurer who does not use the prescribed notice must prove that the insured knew his premium was due and refused to pay it". *Federal Kemper*, 509 Pa. at 4, 500 A.2d at 797 (emphasis added).

The Supreme Court considered the question of what objective conduct should be required by an insured to manifest an intent to cancel a policy. The court turned to an Insurance Department regulation for guidance. It provides in relevant part:

(b) Mere nonpayment of the premium by the insured will not be considered "such action" as to come within the purview of section 6(2) of act of June 5, 1968, (P.L. 140 No. 78) (40 P.S. § 1008.6(2)).[2] Some more affirmative act on the part of the insured shall be necessary, such as a statement by the insured to his agent that he does not want his policy to be renewed or an obtaining by the insured of another policy which he intends shall supersede his current policy.

31 Pa.Code § 61.10(b) (footnote added).

In light of its analysis, the Supreme Court in *Federal Kemper* concluded that the insured's conduct involved more than just "mere nonpayment of premiums", but rather knowing nonpayment. The insured knew that his policy had expired for nonpayment before his accident. Payment was made after the accident in an effort to reinstate the policy retroactively. Such a knowing refusal to pay, the court concluded, is an overt act on the part of the insured to cancel his policy.

**2.** 40 P.S. §§ 1008.1–1008.11 of the Insurance Act concern the reasons for which coverage under automobile policies may be terminated. Section 1008.6 expressly renders the statute inapplicable to the actions of an insured which evidence his intent to cancel as specified in subsection 6(2). That subsection states:

Nothing in this act shall apply:

. . . . .

(2) If the named insured has demonstrated by some overt action to the insurer or its agent that he wishes the policy to be cancelled or that he does not wish the policy to be renewed.

40 P.S. § 1008.6(2).

■ Here, Shepley testified that he never received notification from State Farm that his coverage had been terminated. This testimony went uncontroverted by DOT. Absent such notification, it cannot be said that Shepley's policy was properly cancelled. There was no overt act on the part of Shepley to manifest his intent to cancel the policy as there was in *Riley*. The registrants in both *Riley* and *Federal Kemper* refused to pay their premiums until it was too late, thus manifesting the required overt action. Shepley engaged in no such action. Unlike the registrants in *Riley* or *Federal Kemper*, Shepley testified that he sent his payment in on time, which payment was never received by State Farm through no apparent error of his own. Further, upon learning of the cancellation by letter dated Tuesday, August 25, 1992, Shepley diligently secured new coverage commencing the following Monday, August 31, 1992.

Having concluded that Shepley did not manifest his intention to cancel his insurance coverage with an overt act, we hold that the cancellation of Shepley's coverage was not proper. As a consequence, DOT has failed to meet its burden of establishing that a lapse in coverage occurred as a result of a proper cancellation.

In addition, we note our recent decision in *Department of Transportation, Bureau of Driver Licensing v. Marpoe*, 157 Pa.Commonwealth Ct. 603, 630 A.2d 561 (1993), where we held that section 1786(d) authorizes only an indefinite suspension of registration upon a mere lapse in financial responsibility until insurance for the vehicle is obtained. The issue in *Marpoe* concerned whether section 1786(d) authorized DOT to impose a registration suspension until new insurance is obtained or, as DOT asserted, for a set period of ninety days. DOT argued that the statute is ambiguous as to the length of the suspension as a result of a lapse in financial responsibility; however, statutory construction principles would result in the imposition of a three-month suspension.

Concluding that the provisions of section 1786(d) are unambiguous on its face, we stated:

The General Assembly has only made it a violation to *operate* a vehicle which is not registered, not for not having the money to pay insurance premiums or forgetting to renew an automotive insurance policy. Under this provision, when proof of financial responsibility is submitted to PennDOT (and the required fees paid), registration will be reissued. We cannot ignore this plain expression of the General Assembly to envisage a penalty where none exists.

*Id.* at 609, 630 A.2d at 564 (emphasis added).

Thus, we acknowledge the possibility that DOT's appeal may be moot given our new analysis of the statute in *Marpoe. See also* our recent decision in *Department of Transportation, Bureau of Driver Licensing v. Hafele,* 158 Pa.Commonwealth Ct. 493, 631 A.2d 1114 (1993), where we cited *Marpoe* in support of our similar conclusion that under section 1786(d) DOT is authorized to suspend a vehicle registration for lapse in coverage only until financial responsibility is restored.

Accordingly, based on our discussion above concerning the absence of an overt act, in addition to our holdings in *Marpoe* and *Hafele,* we affirm the order of the trial court.

## ORDER

NOW, this 11th day of January, 1994, the order of the Court of Common Pleas of Lancaster County, dated November 23, 1992, at No. 4863–92, is hereby affirmed.

PELLEGRINI, J., concurs in the result only.